# ATTACHMENT A

Kirkstall Road Enterprises, Inc.
609 Greenwich Street, 9th Floor
New York, NY 10014

As of December 16, 2009

Detroit Police Department
1300 Beaubien, Police Headquarters
Detroit, MI 48226
Attn: Chief Warren C. Evans

CONFIDENTIAL

Re: "THE FIRST 48" Access Agreement

Dear Chief Evans,

This letter agreement ("Agreement") sets forth the terms and conditions between Kirkstall Road Enterprises, Inc. ("Producer") and the Detroit Police Department (the "Department"), in connection with the filming and recording by Producer of the television series currently known as "The First 48" (the "Series") in and around Detroit, Michigan. The Series is intended for initial exhibition on one of A&E Television Network's Programming Services (the "Network"). In consideration of the promises and covenants set forth in this Agreement, the parties agree as follows:

1.  Term. The term of this Agreement shall commence upon the date set forth above and shall continue for a period of one (1) year (the "Term"). Upon mutual agreement between the Department and Producer, the Term of the Agreement may be extended for four (4) additional one (1) year periods. For the avoidance of doubt, the parties may agree to extend the Term for an additional year at any point during the initial Term of this Agreement, and extensions may be agreed to at any time during the applicable Term. Either party may terminate this agreement upon sixty (60) days written notice to the other party. Notwithstanding the expiration or termination of this Agreement for any reason whatsoever, the conditions and provisions of this Agreement that are intended to continue and survive (including, but not limited to, grant of rights, ownership, representations and warranties, indemnities, etc.) shall survive the expiration or earlier termination of this Agreement.

2.  Access. The Department grants and will use its best efforts to facilitate Producer's access to the Department generally, including, without limitation, access to the Department premises and/or locations owned and/or controlled by the Department as Producer may reasonably require during the Term. For security purposes, Producer shall provide the Department with details of each member of the field production crew as requested by the Department. The Department shall advise Producer of any defects or dangers of which it is aware in relation to any premises over which it owns and/or controls. Furthermore, the Department grants Producer access to Department officers, personnel, employees and agents (collectively, the "Personnel") necessary for the Series during the Term and any extension thereof. Subject to the provisions in Paragraph 3(a) below, the Department shall authorize Personnel to allow video and audio recorded during production as is reasonably necessary to

capture an innovative and documentary experience of the Personnel in the context of the Series.

3. <u>Producer's Obligations</u>.

a. Producer acknowledges and agrees that in order to protect the integrity of the Department's work, maintain the safety of officers, the public and Producer's personnel, and to minimize liability to the Department, Producer shall comply with all instructions and restrictions (including instructions and restrictions on filming or recording) as directed by the Department for purposes of the foregoing, in the Department's sole discretion, at any and all filming locations. Any filming by Producer and the work of Producer's personnel shall not interfere in any manner whatsoever with the Department's performance of its duties. It is understood that in exercising its discretion under this paragraph, the Department will act in a manner that complies with all constitutional, statutory, or other legal requirements, as well as Department policies, practices, procedures and legal advice pertaining to such requirements.

b. Producer acknowledges and agrees that it may not, during the course of filming put the Department to any expense it would not otherwise ordinarily incur. All filming will be done at no cost to the Department.

c. Producer shall be responsible for obtaining all necessary consents including the written consent of Department Personnel featured in the Series and the Department hereby confirms that the Department shall permit Department Personnel to voluntarily providing consent to Producer's filming.

d. Producer will provide certificates of insurance naming the City of Detroit as additional insured on a claims made basis with an aggregate limit of One Million Dollars ($1,000,000).

4. <u>Rights</u>.

a. Producer intends to produce footage concerning the Department and its Personnel at work and off duty, including, without limitation, conducting interviews (both formal and informal) with Department Personnel, and capturing any and all footage of the Department, Department Personnel and Department operations as Producer reasonably requires to produce the Series. Subject to the limitations in Paragraph 3(a), the Department hereby agrees and consents, and shall authorize the Department Personnel to agree and consent, to the filming and recording of the Department, the Department Personnel and the Department Personnel's voices and likenesses at Producer's discretion (all of the foregoing, the "Footage") and the use of the Footage in whole or in part. Subject to the provisions of Paragraph 5(a) below, the Department irrevocably grants to Producer, and shall authorize Department Personnel to grant to Producer all rights and consent or waive the same so as to permit the fullest use of the Footage or any part(s) thereof in all media, worldwide, in perpetuity. The Department agrees, and shall authorize the Department Personnel to agree that the Footage, the Department Personnel likeness(es), photograph(s) and biographical material about the Department and Department Personnel may be used for promotional purposes relating to the Series. Notwithstanding the expiration or termination of this Agreement for any reason whatsoever, Producer's rights in and to the Footage as set forth

herein, and Network's right to exploit the Footage and/or Series, shall survive the expiration or earlier termination of this Agreement

    b.    The Department agrees that, as between the Department and Producer, Producer shall own all right, title and interest in and to the Series and all elements thereof and relating thereto (collectively the "Material") and the Material will be solely created by the undersigned as a "work made for hire" for Producer for use as part of an audio/visual work within the meaning of U.S. Copyright Law, with Producer being deemed the sole author, and, at all stages of completion, the sole and exclusive owner, of the Material and of all rights of every kind or nature, whether now known or hereafter devised (including, without limitation, all copyrights and all extensions and renewals of copyrights) in and to the Material in perpetuity and throughout the universe and in all languages, with the right to use, exploit and advertise the Material and the Series, in any form, matter and media, whether now known or hereafter devised, without any obligation whatsoever, other than as described in this Agreement, to the undersigned or any person or entity claiming through or on behalf of the undersigned.

    If, under any applicable law, the fact that the Material is a "work made for hire" is not effective to place authorship and ownership of the Material and the Series and all rights therein in Producer, or in the event that it is determined that the Material or any part thereof does not constitute a "work make for hire" for Producer within the meaning of the copyright laws of the United States, then to the fullest extent allowable and for the full term of protection otherwise accorded to the undersigned under such applicable law, the undersigned hereby assigns to Producer irrevocably, exclusively and perpetually all rights of every kind in and to the Material throughout the universe and any and all of the undersigned's right, title and interest in the Series and any other works now or hereafter created containing the Material.

    c.    The Department irrevocably grants Producer the right to use the Department's proprietary intellectual property, names, trademark(s), logos or trade names as well the names and images of the Department (collectively, the "Department Images") in and in connection with the Series, as Producer may determine in its sole discretion. For the avoidance of doubt, Producer shall have the right to use or refer to Department Images visually and/or in dialogue as Producer shall determine in its sole discretion.

5.    Department Review.

    a.    The Department shall have the right to review the rough cut of each episode of the Series to ensure factual accuracy of the Footage contained in each episode of the Series. Due to very tight production schedules in connection with the Series and other exigencies of production, Producer shall send to Second Deputy Chief John Roach or a designee (the "Representative") a copy of rough cut. The Department agrees to review the rough cut containing the Footage immediately and return any comments to Producer within five (5) business days of the Department's receipt of the applicable rough cut for review (the "Review Period"). If Producer does not receive comments within the Review Period, the Footage in such episode shall be deemed approved. If the Representative provides timely comments pursuant to this paragraph, Producer shall meaningfully consult with the Department and make good faith efforts to address such comments. Notwithstanding the foregoing and subject to the provisions in Paragraph 5(b), as between Producer and the

Department, Producer shall have the absolute discretion to determine the editorial content of the Series and each episode thereof including, but not limited to, theme, featured events and story line.

   b.   Producer acknowledges and agrees that the Series shall not contain (i) any confidential investigatory, procedural and/or operational information concerning the Department which would not be available to the general public or (ii) any footage the dissemination of which would violate any legal duty of the Department or its Personnel, subject the Department to civil liability, or violate any constitutional or legal right of any other individual (collectively, "Confidential Information"). Upon notification in writing during the Review Period as set forth in paragraph 5(a) by the Representative objecting to the use of any Confidential Information in the applicable episode of the Series, Producer shall not include any such Confidential Information in the Series. If no written objection of the inclusion of any Confidential Information is made during the Review Period, such inclusion shall be deemed approved.

6.   Exclusivity.   During the Term of this Agreement, the Department will not, prior to the first transmission of the first episode of Series featuring the Department extend the same level of cooperation with another media company, in connection with and for the filming of an observational documentary program or series that features the Department's homicide division and its homicide investigations in a manner that is similar in theme or style of the Series that may be broadcast on television; provided, however, that in the event the Department seeks to enter into an agreement with another media company in connection with a "cold case" homicide investigation program or series featuring the Department's homicide division, the Department shall notify Producer prior to entering any such agreement. Notwithstanding the foregoing, Department may participate in any other types of television program (e.g., news programs, including local news features) that are not similar in theme, style or subject matter as the Series or engage in any media activity that the Department routinely engages in the Department's ordinary course of operation.

7.   Representations and Warranties.   The undersigned represents and warrants (i) it has the right, power and authority to enter into this Agreement and to fulfill its obligations and grant the rights hereunder; (ii) there is no contract with any other person, firm, corporation or entity which will in any way interfere with the rights granted to Producer hereunder or with the performance of the Department's obligations under this Agreement; and (iii) there are no additional permissions necessary for the Department to be able to grant the rights or fulfill its obligations hereunder or any such additional permissions already have been obtained by Department.

8.   Miscellaneous.

   a.   Producer shall be under no obligation to actually use the Footage in any manner.

   b.   Producer shall at all times defend, indemnify and hold the Department harmless from and against any and all claims, damages, liabilities, costs and expenses, including reasonable outside attorney's fees (collectively, "Claims"), arising out of any breach of any of Producer's obligations contained herein and in connection with the development, production and/or exploitation of the Series; provided, however, that the

foregoing defense and indemnification shall not apply to any Claims arising out of or resulting from: (i) any breach of any of the Department's representations, warranties or agreements herein; or (ii) malfeasance and/or gross negligence and/or other intentional tortious acts or omissions committed by the Department and/or any of the Department's respective agents, employees, guests or invitees.

c. The Department shall not at any time issue, authorize or participate in any news story, magazine article or other publicity in connection with the Department's participation in the Series or disclose any confidential information about the Series, Producer and/or the Network without Producer's written consent in each instance. Notwithstanding the foregoing and for the avoidance of doubt, this paragraph shall not prevent the Department from releasing to the press and/or local news any information regarding a case that is featured in or relates to the Series. Except for disclosure by Producer to a third party broadcaster and in connection with the exploitation of the Series, the parties agree that this Agreement is confidential and that they may not disclose the contents to any third party apart from their professional advisors or as may be required by law.

d. Producer may assign any and all rights granted under this Agreement including, without limitation, to the Network.

e. This Agreement represents a complete and binding contract between the parties hereto, superseding any prior agreements, negotiations or understandings (written or oral) between them and may not be amended or otherwise changed expect by a written instrument signed by both Producer and the Department. The rights granted herein shall inure to the benefit of Producer, its licensees, successors and assigns. This Agreement is subject to and shall be governed by and construed in accordance with the laws of the State of Michigan and, if applicable, the federal laws of the United States of America. Each party hereby submits to the jurisdiction of the courts of the State of Michigan.

If the foregoing conforms to your understanding of the Agreement, please sign in the space provided below. Upon full execution thereof, this Agreement shall be binding.

AGREED AND ACCEPTED

Detroit Police Department

By: _____

Its: _____

Kirkstall Road Enterprises, Inc.

By: _____

Its: EVP- New York